**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| | :   Hon. Faith S. Hochberg, U.S.D.J. |
| UNITED STATES OF AMERICA | : |
| | :   Criminal Case No. 11-719 (FSH) |
| v. | : |
| | :   **OPINION & ORDER** |
| DERISH WOLFF | : |
| | :   Date: February 20, 2013 |
| | : |

**HOCHBERG, District Judge:**

     This matter comes before the Court upon Defendant's motions currently pending before the Court: (1) for a Bill of Particulars, (2) to Suppress Materials Seized Pursuant to the August 24, 2007 Search Warrant, (3) to Compel the Disclosure of *Giglio* Material, and (4) to Compel Discovery Pursuant to *Brady* and Rule 16.  The Court has reviewed the submissions of the parties and on October 16, 2012, heard oral argument on all four motions.[1]

## I.  BACKGROUND

     Defendant Wolff was formerly the Chief Executive Officer and President of the Louis Berger Group, Inc. ("LBG"), an engineering consulting company that frequently did business with federal government agencies including the United States Agency for International Development ("USAID").  The contracts between LBG and USAID were "cost-plus" contracts, under which LBG was reimbursed for certain time spent on government projects and for certain overhead expenses that were allocated to those projects.  These indirect costs were billed under the "GG code."  (Gov't Opp. to Mot. for Bill of Particulars at 4.)

---

[1]     Defendant Wolff also moved for discovery of certain "hot documents."  (Docket No. 31.) The parties resolved that issue, and Defendant withdrew his motion without prejudice. (Docket No. 37.)  The Court will therefore terminate that motion.

On July 31, 2006, Harold Salomon, a former employee of LBG, filed a civil *qui tam* complaint against LBG in the District of Maryland alleging violations of the False Claims Act and similar state laws by LBG's fraudulent billing of the federal government and several states for inflated overhead costs. (Gov't Opp. to Mot. to Suppress at 3.) That action remains under seal. (*Id.*) A federal investigation ensued, and on August 24, 2007, Magistrate Judge Shwartz signed a warrant authorizing the search of LBG's corporate headquarters in East Orange, New Jersey and the seizure of computers and documents related to the investigation. (*Id.*) LBG subsequently negotiated a civil settlement with the Department of Justice and United States Attorney's Office for the District of Maryland for $50.6 million. (*Id.* at 4.) LBG also entered a Deferred Prosecution Agreement with the United States Attorney's Office for the District of New Jersey, in which it agreed to the appointment of a federal monitor and a criminal penalty of $18.7 million. (*Id.*) In addition, Salvatore Pepe, LBG's former Chief Financial Officer, and Precy Pellettieri, LBG's former Controller, pled guilty before Judge Shwartz to one count of defrauding the government with respect to claims, in violation of 18 U.S.C. § 287. (*Id.*)

On October 19, 2011, a federal grand jury returned a six-count indictment charging Wolff with conspiring to defraud USAID and submitting false invoices to USAID. Among other things, the Indictment charges that from 1990 to 2000, Wolff ordered the LBG Controller and Assistant Controller to pad accounting department time sheets with GG labor hours that were not spent on USAID-related projects. (Gov't Opp. to Mot. for Bill of Particulars at 5.) The Indictment also charges that after 2000, Defendant instructed others at LBG to target certain GG rates and to transfer hours from the general overhead account to the GG account. (*Id.* at 5-6.) On November 9, 2011, former Chief Judge Brown entered an Order for Discovery and Inspection. (Docket No. 11). The case was then reassigned to Judge Wigenton. (Docket No.

13).   Judge Wigenton modified the Order for Discovery and Inspection to reflect that *Giglio*

material was to be disclosed within a reasonable time prior to trial.  (Docket No. 22.)  On August

9, 2012, the case was reassigned to this Court.  (Docket No. 41.)  On October 16, 2012, the Court

heard oral argument on the pretrial motions currently pending before the Court.

## II.    DISCUSSION

### A.  Motion for a Bill of Particulars

The bill of particulars is "intended to give the defendant only that minimum amount of

information necessary to permit the defendant to conduct his own investigation." *United States v.*

*Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985).   "[M]otions for a bill of particulars should be

granted whenever an indictment's failure to provide factual or legal information significantly

impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at

trial." *U.S. v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989).  "In deciding whether to grant the bill

[of particulars], the Court may consider the scope of information available through discovery as

well as the information set forth in the indictment." *U.S. v. Brown*, 2008 WL 5484121, *6

(D.N.J. 2008).

Defendant Wolff contends that the Indictment is too vague to allow him to prepare for

trial in this case, particularly in light of the government's contentions that the alleged conspiracy

involves manipulation of rates paid on numerous contracts and occurred over nearly two

decades.  (Moving Br. at 2-7.)

The Indictment sets forth with some precision the alleged scheme to inflate the GG rate

with fraudulent manipulations of the GG997A and GG997B cost codes, and describes in detail

Defendant's role in these manipulations. (*See* Indictment, Ct. 1, ¶¶ 6-12.) The Indictment also

includes details about meetings in which Defendant Wolff allegedly directed the conspiracy.

(See *id.* at ¶ 12(d).) The Indictment identifies two alleged co-conspirators by name, one co-conspirator by initials, and other individuals with knowledge of the facts of the case by their titles.  (*Id.* at ¶¶ 1(d)-(f), 4, 6-12.)  Additionally, Defendant was provided a show-and-tell with the Government, in which the Government provided "highlights of most of its witnesses' anticipated testimony."  (Opp. Br. at 15.).  *See United States v. Urban*, 404 F.3d 754, 772 (3d Cir. 2005) (reasoning that "access to discovery further weakens the case for a bill of particulars").

Defendant contends that the Indictment alleges a conspiracy to defraud the government in an "unspecified number of unidentified government contracts."  (Br. in Support of Mot. to Suppress at 2.)  In fact, the charges do not pertain to any particular contract.  (Opp. to Mot. for Bill of Particulars at 17.)  Instead, the Indictment alleges that Defendant manipulated an overhead rate that was applied to any cost-plus contract between LBG and USAID performed overseas.  (*Id.*; *see also* Indictment, Ct. 1, ¶¶ 6-12.)

Examined in its entirety, the information provided to Defendant in the Indictment and through discovery is sufficient to allow him to prepare his defense.  His request that the government identify in detail its allegations of precisely how Defendant manipulated the overhead rates is a discovery request beyond the scope of a bill of particulars.  *See, e.g.*, *United States v. Zolp*, 659 F. Supp. 692, 707 (D.N.J. 1987) ("detailed discovery requests," including the "'when where and how of any overt acts not alleged in the indictment . . . ,'" are not the purpose of bills of particulars) (quoting *United States v. Armocida*, 515 F.2d 49, 54 (3d Cir. 1975) (internal quotation omitted)).

The cases on which Defendant relies are readily distinguishable.  In *United States v. Gatto*, 746 F. Supp. 432, 477 (D.N.J. 1990), *rev'd on other grounds*, 924 F.2d 491 (3d Cir.

1991), the court ordered the government to provide "the precise date and place of each event alleged in the indictment."  In that case, in which the government alleged a RICO conspiracy, the court found that the indictment itself was defective because it referred to acts "of the type" alleged in the racketeering count, which included alleged murders, gambling, and extortion.  *Id.* at 460.  In granting the request for a bill of particulars, the court indicated it was "cur[ing]" the defectively "broad and general" language of the Indictment.  *Id.*  No such defect exists in the Indictment in the case at bar.  Instead, the Indictment identifies the particular object of the alleged conspiracy—namely, padding work hours from 1990 to 2000 and then, from 2000 to 2009, inflating billing rates by preparing false journal entries reclassifying employee work hours and other costs.  (Indictment, Ct. 1, ¶¶ 6-12.)

Similarly, Defendant relies on *United States v. Vastola*, 670 F. Supp. 1244, 1269-70 (D.N.J. 1987), for the proposition that "[i]n cases involving allegations of conspiracy, 'the names of all co-conspirators or participants in the alleged offenses should be provided, except insofar as . . . such disclosures might endanger the safety of prospective witnesses.'"  However, *Vastola* similarly involved multiple defendants charged under a large RICO conspiracy with varied illegal activities.  *Id.* at 1260.  The court in that case clearly noted that it was acting "in its discretion" in ordering more detailed disclosure in light of the number of defendants and underlying crimes.  *Id.*  at 1269-70.  It does not apply to *every* conspiracy charge.  *See, e.g.*, *United States v. Smith*,  2010 U.S. Dist. LEXIS 120947, at *17 (D.N.J. Nov. 16, 2010); *United States v. Brown*, 2008 U.S. Dist. LEXIS 102432, at *15-17 (D.N.J. Dec. 18, 2008).

For the foregoing reasons, the Court will deny Defendant's Motion for a Bill of Particulars.

**B.  Motion to Suppress**

Defendant Wolff contends that the search warrant that was issued on August 24, 2007, was defective, and the results of that search must be suppressed, for two reasons: (1) the warrant was obtained on the basis of false statements, and (2) the warrant was an impermissible "general search warrant" and the Government failed to exercise restraint in executing it.

Search warrant affidavits enjoy a presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 171 (1978).  To obtain a hearing, a defendant challenging the truthfulness of factual statements made in an affidavit of probable cause supporting a search warrant must make a "substantial preliminary showing" that the affidavit contained a false statement, made knowingly or with reckless disregard for the truth, which is material to the probable cause determination. *Franks,* 438 U.S. at 171; *U.S. v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006).  That showing requires more than mere assertions: the defendant must specifically point out which part of the affidavit is false and provide an offer of proof contradicting the affidavit, including sworn affidavits or other similar materials, or explaining the absence of such materials.  *Yusuf*, 461 F.3d at 383 n.8; *Franks*, 438 U.S. at 171 ("Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.").  Finally, even if a defendant makes that substantial showing, if there is "sufficient content in the warrant affidavit to support a finding of probable cause" when the allegedly false statements are set aside, "no hearing is required."  *Franks*, 438 U.S. at 172.  A *Franks* hearing is premised upon a proffer of affidavits; it is not a mere discovery exercise or a dry run for trial.  *See Franks*, 438 U.S. at 171 ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.").

### (1)  Alleged False Statements

Defendant Wolff contends that the search warrant was predicated on false statements.  He contends that the search warrant is invalid because the affiant, Special Agent Chadwick Howard, intentionally or with reckless disregard for the truth relied on false statements made by Harold Salomon, the *qui tam* relator.  Defendant points to two allegedly false statements in the affidavit: (1) that LBG overbilled for domestic services, and (2) that Mr. Wolff improperly billed his time to the GF code, which is less than the GG code.

As an initial matter, Defendant makes no showing that the allegations are false. Concerning allegations of domestic overbilling, Defendant relies on the fact that the Government's Deferred Prosecution Agreement with LBG does not refer to domestic billing. (Br. in Support of Mot. to Suppress at 10.).  However, the Government's decision not to include those charges in the Deferred Prosecution Agreement does not necessarily indicate that the allegations against this Defendant are false.

Defendant has not proffered—nor explained why he cannot proffer—any information that would indicate that there was no probable cause to conduct the search.  *Cf. Franks* 438 U.S at 171.  Moreover, he has not demonstrated how, excluding the allegedly defective statements in the affidavit, the remaining statements do not provide probable cause for the warrant.  *Id.*  Even if Defendant had shown that these two statements are false, the allegations in the remainder of the Indictment—including the allegations of overbilling based on the GG code—are  sufficient to demonstrate probable cause for the search.

### (2) Scope of the Warrant and Search

Wolff also contends that the warrant is unconstitutionally broad because it encompassed

"virtually all of the hard files in LBG's offices" and "authorized the Government to seize practically every document in LBG's offices."  (Br. in Support of Mot. to Suppress at 12-15.)

"[W]arrants must 'particularly describ[e] the place to be searched and the persons or things to be seized.'"  *United States v. Yusuf*, 461 F.3d 374, 393 (3d Cir. 2006) (quoting U.S. const. amend. iv.)  A warrant is not unconstitutionally general "unless it can be said to 'vest the executing officer with unbridled discretion to conduct an exploratory rummaging ... in search of criminal evidence.'"  *United States v. Leveto,* 540 F.3d 200, 211 (3d Cir.2008) (quoting *United States v. Christine*, 687 F.2d 749, 753 (3d Cir. 1982)); *see also Yusuf*, 461 F.3d at 393 (collecting cases in which courts found warrants unconstitutionally general).  "The fact that [a] warrant authorize[s] a search for a large amount of documents and records does not necessarily render the search invalid so long as there exists a sufficient nexus between the evidence to be seized and the alleged offenses."  *United States v. Am. Investors of Pittsburgh*, 879 F.2d 1087, 1105-06 (3d Cir. 1989).

The offenses indicted by the grand jury allege pervasive billing fraud over the course of nearly 20 years.  The warrant in this case, which incorporated by reference the supporting affidavit, clearly identified that the categories of documents to be seized were evidence, fruits, or instrumentalities of violations of specific enumerated federal statutes.  (Ex. B. to Gov't Br. Opp. Motion to Suppress.)  The affidavit and warrant further specified the kind of evidence to be found, and provided a date limitation on the scope of the records to be seized.  (*Id.*)

In this case, there is a sufficient nexus between the scope of the alleged crime and the scope of the warrant, which was limited to the alleged violation of specific federal statutes.  The breadth of the documents to be searched is not excessive in light of the allegations of a long-running, complicated financial scheme.  *Cf. Am. Investors of Pittsburgh*, 879 F.2d at 1106

8

("Given the complex nature of [the alleged financial criminal] enterprise, we cannot say that the categories overdescribed the extent of the evidence sought to be seized.").

Wolff also complains that the government agents executed the search warrant in disregard of its terms, and contends that the Court should suppress the evidence for that reason. (Br. in Support of Mot. to Suppress at 15-16.)  In particular, he argues that the Government improperly retained hard drives for an off-site search, and that some of the documents seized included personal information concerning his finances, estate planning, and family income taxes.

To suppress the items seized, Wolff must show that the agents acted with "flagrant disregard" for the terms of the warrant.  *Am. Investors of Pittsburgh*, 879 F.2d at 1104, 1107; *see also United States v. Hill*, 322 F.3d 301, 306-07 (4th Cir. 2003) (no flagrant disregard of the terms of the warrant if, at the time of the search, "it [is] plausible for the agents to view the[ ] items as within the scope of the search" authorized by the warrant).

Here, Wolff has not carried his burden of showing that the agents acted beyond the scope of the warrant.  The only documents he cites as outside the scope of the warrant—his personal financial documents—were not beyond the terms of the warrant, which authorized the seizure of "[a]ny and all documents relating to corporate officers and employees or consultants, including but not limited to . . . IRS Forms W-2 . . . annual salaries, bonuses, and dividends, or other remuneration . . . ."  (Ex. B to Gov't Opp. to Mot. to Suppress, Attach. B ¶ 2(h).)

Accordingly, Defendant's motion to suppress or for a *Franks* hearing is denied.[2]

---

[2]     Because the Court finds that Defendant has not met his burden for a *Franks* hearing, the Court need not resolve the factually complicated issue of which areas of the searched building Defendant has standing to challenge.  The Court assumes, without deciding, that he has standing to challenge evidence collected from his private office, which he contends was within his control and in which he had a reasonable expectation of privacy.  *United States v. Stearn*, 597 F.3d 540, 550-51 (3d Cir. 2010).

## C.  Motion to Compel *Brady* and Rule 16 Material

Defendant moves to compel *Brady* and Rule 16 material.  He contends that the sealed *qui tam* relator action must contain exculpatory or impeachment material subject to *Brady v. Maryland*, 272 U.S. 83 (1963) and Rule 16 of the Federal Rules of Criminal Procedure, and therefore must be disclosed.  He also seeks to compel production of the cost-plus contracts awarded by USAID to LBG from 1990 through July 2009 and audit reports dating to the mid-1980s, which he contends are material to his defense.  Finally, Defendant also seeks to compel production of twelve categories of documents that he believes would tend to be helpful to his case, including, inter alia, "documents . . . arguably . . . suggesting. . . that Mr. Wolff was not a source of the 'targeted' overhead rates alleged in the Indictment,  . . . [or] that LBG's alleged targeted government overhead rates were based on [non-fraudulent] reasons. . . ."  (Br. in Support of Mot. to Compel *Brady* Material at 35-36.)[3]

*Brady* "requires disclosure by the government of evidence that is both exculpatory and material."  *United States v. Starusko*, 729 F.3d 256, 260 (3d Cir. 1984) (citation omitted).  "Exculpatory evidence includes material that goes to the heart of the defendant's guilt or innocence as well as that which might well alter the jury's judgment of the credibility of a crucial prosecution witness."  *Id.*  "[M]ere speculation about materials in the government's files [does not] require[ ] the district court . . . under Brady to make the materials available for [Defendant's] inspection."  *United States v. Am. Radiator & Sanitary Corp.*, 433 F.2d 174, 202 (3d Cir. 1970).[4]

---

[3]     The Government has made one *Brady*-related disclosure.  (Moving Br. at 4.)

[4]     Defendant contends that the standard for *Brady* supplied by the government applies only to post-trial review of *Brady* violations.  (*See* Reply Br. at 9.)  However, the Supreme Court has made clear that the scope of the government's duty, and of a defendant's right, under *Brady* is defined retrospectively—by the effect the evidence will have on the outcome of trial.  *See, e.g.*, *Strickler v. Greene*, 527 U.S. 263, 281 (1999) ("[S]trictly speaking, there is never a real '*Brady*

Here, Defendant contends that the *qui tam* relator action must contain *Brady* material because the Defendant was not one of the original targets of the government investigation after the *qui tam* action was filed, and therefore whatever information the relator provided must be favorable to the defense.  (Br. in Support of Mot. to Compel *Brady* Material at 10.)[5]

Defendant relies on several additional unsupported assertions in contending that the government has failed to provide *Brady* material.  For instance, Defendant contends that Pellettieri "consistently rejected government implications that she and [Defendant] were involved together in a criminal conspiracy," and "refused to . . . implicate [Defendant]." (Moving Br. at 4.)  Similarly, Defendant contends that Pepe "changed his position only after considerable Government pressure."  (*Id.*)  Defendant then argues that it is "inconceivable" that the government does not have additional *Brady* materials in light of "the nature and 20-year span of the charges, and witnesses' protestations of innocence (even if later changed) and rejection of Government efforts that they implicate Mr. Wolff in criminal acts of fraud or conspiracy."

violation' unless the [Government's] nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."); *United States v. Bagley*, 473 U.S. 667, 699 (1985) (Marshall, J., dissenting) ("[*Brady*] defines [a defendant's] right not by reference to the possible usefulness of the particular evidence in preparing and presenting the case, but retrospectively, by reference to the likely effect the evidence will have on the outcome of the trial."); *see also United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001) ("*Bagley* makes the *extent* of the disclosure required by *Brady* dependent on the anticipated *remedy* for violation of the obligation to disclose: the prosecutor must disclose evidence if, without such disclosure, a reasonable probability will exist that the outcome of a trial in which the evidence had been disclosed would have been different.").

[5]    Defendant also contends that the *qui tam* relator action has remained "inexplicably" sealed for several years, even though charges were filed against Defendant, and that the *qui tam* relator was filed "in unusual fashion" by the relator after several months of cooperating with the government.  (*Id.* at 1.)  Those contentions are without merit.  First, a previous version of the False Claims Act expressly contemplated that a relator would provide information to the Government before filing an action.  *See* 31 U.S.C. § 3730(e)(4)(B) (amended Mar. 23, 2010). Second, the False Claims Act provides for the sealing of *qui tam* actions for good reason, and there is nothing to suggest that the action here has been improperly sealed.  *See, e.g.*, *Houchins v. KQED, Inc.*, 438 U.S. 1, 9 (1978).

(Moving Br. at 5.)  He contends that the government's "representation that it has no *Brady* material is patently false," and that, "[w]hile the Government pays lip service to its *Brady* obligations and assures us of its intent to comply with them, it has clearly failed to do so."  (*Id.*)

Defendant's allegations, while phrased aggressively, do not rise above the level of "mere speculation about materials in the government's files. . . ."  *Am. Radiator*, 433 F.2d at 202.  That speculation is insufficient justification for the Court to order the government to produce the material that Defendant asserts is subject to *Brady*.  As in *United States v. Shaw*, Defendant has not made a showing that he is entitled to access to the sealed *qui tam* documents, as he has not made any showing that there is exculpatory and material information in those files.  113 F. Supp. 2d 152, 162 (D. Mass. 2000).  As in *Shaw*, the government here has represented that it is aware of its *Brady* obligations and will continue to comply with them.  *Id.* At this time, this Court has been shown nothing to suggest that this representation is not made in good faith.

Defendant also contends that twelve categories of documents that demonstrate his lawful conduct, or otherwise contradict aspects of the Indictment, are material to his defense and therefore subject to discovery pursuant to Rule 16.  (Moving Br. at 35-36.)  As the government argues, the breadth of these requests, and the tenuous connection of some of these purported documents to the case, demonstrates that Defendant seeks evidence of noncriminal activity.  "A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions."  *U.S. v. Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990).  Accordingly, defendants are not entitled to broad swaths of documents or other materials that demonstrate noncriminal activities.[6]

---

[6]     To the extent the categories of documents overlap with the *qui tam* documents described above, Defendant's requests for those documents are merely speculative for the reasons set forth above.

The Court therefore denies Defendant's motion to compel purported *Brady* and Rule 16 materials.[7]

### D.  Motion to Compel *Giglio* Material

Defendant also moves to compel the government to produce *Giglio* material within 10 days.  The government contends in opposition that this request was previously denied by the Court and is therefore barred as law of the case.  (*See* Br. Opp. Motion to Compel *Giglio* at 1-2 (citing Docket Nos. 11, 22).)

The Court has inherent authority to order criminal discovery before trial.  *See, e.g.*, *U.S. v. Nobles*, 422 U.S. 225, 231 (1975) (citations omitted); *U.S. v. Webster*, 162 F.3d 308, 339 (5th Cir. 1998).  At oral argument, the Court found that the complexity of the case warranted disclosure of *Giglio* material 45 days in advance of trial, and indicated it would take under consideration Defendant's request for disclosure further in advance of trial.  After considering the complexity of the case, and the number of potential witnesses, the Court will order *Giglio* material disclosure 60 days prior to trial.

## III.   CONCLUSION & ORDER

For the reasons set forth above,

**IT IS** on this 20th day of February, 2013,

**ORDERED** that Defendant's Motion for Discovery (Docket No. 31) is **TERMINATED AS MOOT**; and it is further

**ORDERED** that Defendant's Motion for a Bill of Particulars is **DENIED**; and it is further

---

[7]   The Government has represented that it is preserving the audit work papers that it is able to collect.  Additionally, as the Court has explained, the contracts on which LBG was performing during Defendant's scheme are not material, as the overhead rate for those contracts was set in separate agreements which have already been disclosed.  *See* § II.A, *supra*.

      **ORDERED** that Defendant's Motion to Suppress or for a *Franks* Hearing is **DENIED**; and it is further

      **ORDERED** that Defendant's Motion to Compel *Brady* Material and for Rule 16 Discovery is **DENIED**; and it is further

      **ORDERED** that Defendant's Motion to Compel *Giglio* Material is **GRANTED IN PART**.


      /s/ Faith S. Hochberg
      Hon. Faith S. Hochberg, U.S.D.J.